FILED
2011 May-02 PM 12:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

COMPASS BANK,                    }
                                 }
     Plaintiff,                  }
                                 }    CIVIL ACTION NO.
v.                               }    10-AR-2609-S
                                 }
CHASE BAILEY, et al.,            }
                                 }
     Defendants.                 }
```

## MEMORANDUM OPINION

Before the court is the motion to compel arbitration (Doc. 25) and the supplement thereto (Doc. 32), filed by defendants, Chase Bailey ("Bailey") and Jesse Ian Bailey as Trustee of the Chase Bailey Insurance Trust ("Jesse Ian-Trustee"). The motion is joined by defendant, Shawn B. McCarthy individually and as the former Trustee of the Chase Bailey Insurance Trust ("McCarthy and McCarthy-Trustee"). (Docs. 43, 47.) Plaintiff, Compass Bank ("Compass") opposes the motion. (Docs. 35, 38.) It has filed a second amended complaint that adds nothing to this court's analysis. For the reasons that follow, defendants' motion to compel arbitration will be granted.

## FACTS

The complaint arises from a series of complex financial transactions between the parties. Bailey purchased a $20 million life insurance policy, financed by a third-party though the Trust's issuance of notes and bonds in the principal amount of $3.1 million. To secure the principal amount of the Trust's bonds and

interest accrued therefrom, Compass issued a $3.1 million irrevocable letter of credit ("LOC") to a third party for the benefit of the Trust on January 27, 2010.  Compass and Bailey executed at least four related documents in connection with the LOC: (1) a Commitment Letter; (2) a Reimbursement and Security Agreement ("Reimbursement Agreement"), which, *inter alia*, specifically incorporates the Commitment Letter;  (3) a Security Agreement, granting Compass an interest in Bailey's investment account with Deutsche Bank; and (4) a Continuing Guaranty, referenced in the Reimbursement Agreement, which grants Compass a security interest in Bailey's Compass accounts.  None of these documents contain an arbitration clause.

The Reimbursement Agreement provides that Compass "shall be 100% collateralized and margined at all times" on the LOC.  To serve as collateral, the Reimbursement Agreement provided that: (1) the Trust would assign to Compass a life insurance policy on Bailey with a cash value of $1.4 million; and (2) Bailey, as guarantor, would maintain a minimum of $1.7 million in an account selected by Compass.  The Reimbursement Agreement also provided that Bailey would open a "Proceeds Account" with Compass, into which Compass would deposit any proceeds from the notes.  The Commitment Letter required Bailey to open a Compass Money Market Account ("MMA").  The purpose of the MMA was to hold the collateral for the Letter of Credit, as required by the Reimbursement Agreement.

Bailey opened, or Compass opened in his name, three Compass accounts: (1) the aforementioned MMA, holding collateral; (2) the aforementioned Proceeds Account, a deposit account; and (3) a Trust Sweep Account ("Sweep Account"), a deposit account used by Compass to pay bond interest.  These account documents contain expansive arbitration clauses, and the arbitration clauses are identical for both consumer deposit accounts and non-consumer deposit accounts.  The arbitration clauses provide, in pertinent part:

> You and we agree, upon written demand made by you or us, to submit to binding arbitration all disputes, controversies, and claims, whether based on contract, fraud, tort, intentional tort, statute, regulation, constitution, common law, equity, or any other legal basis or theory, and whether preexisting, present, or future, that arise out of or relate to [] this Agreement, your account, any transaction involving your account . . . or [] the validity, interpretation, scope or enforceability of this Agreement or the interpretation or scope of the Arbitration Clause.
> . . .
> Any dispute as to whether any statute of limitations, estoppel, waiver, laches, or similar other doctrine bars the arbitration of any Claim shall be decided by arbitration in accordance with the provisions of this Agreement.
> . . .
> You and we agree that the taking of these actions or any other participation in litigation by you or us does not waive any right that either you or we have to demand arbitration at any time with respect to any subsequent or amended Claim filed against you or us after commencement of litigation between you and us.

(Doc. 32-1 at 11-12.)

3

Bailey transferred $900,000 into the MMA, and on March 22, 2010, Compass demanded, in order to be fully secured, that he transfer the remainder of the $1.7 million from his Deutsche Bank account, or execute a control agreement giving Compass first priority over the Deutsche Bank funds.  Bailey did not comply.  Compass claims that the Deutsche Bank funds were transferred into the account of a third party in order to evade the Security Agreement.  Furthermore, Compass claims that the cash value of Bailey's life insurance policy is $513,585, rather than the $1.4 cash value claimed by Bailey.

According to Compass, in July, 2010, Jesse Vogtle ("Vogtle"), a local attorney for Compass, and Mike Chubrich ("Chubrich"), a New Hampshire attorney representing Bailey, participated in a conference telephone call.  During the conversation, Vogtle informed Chubrich that, unless defendants deposited the required collateral into the Compass accounts, Compass would file a lawsuit in Alabama.  Compass asserts Chubrich indicated that, should Compass sue, defendants "would confess judgment that they were in breach of the parties' agreements."  (Doc. 35-3 at 22.)

On September 24, 2010, Compass filed its complaint in this court against Chase Bailey and the Trust, alleging breach of contract, conversion, and misrepresentation, and further seeking specific performance in the form of full collateralization of the LOC.  On October 14, 2010, Chubrich emailed Vogtle, explaining that

4

defendants were having difficulty finding local defense counsel. In the email, Chubrich stated:

> As I previously predicted, my client is prepared to confess Judgment with respect to your Count I, provided you grant a reasonable extension of time so we can interview and retain local counsel with respect to Counts II and III.

(Doc. 35-3 at 25.)  Chubrich never appeared before this court, and did not accept service on behalf of his purported clients.

Bailey's and the Trust's first appearance was on October 25, 2010, when a local attorney filed two motions to dismiss.  The motion to dismiss the complaint against Bailey (Doc. 5) argued that the amount in controversy was less than $75,000, such that the court lacked diversity jurisdiction.  The motion to dismiss the complaint against the Trust (Doc. 6) correctly argued that the complaint was not served on the Trustee, and that a trust is not a legal entity that can be sued directly.  After a hearing on said motions, Compass filed its first amended complaint (Doc. 17) on December 27, 2010, wherein it added as parties defendant:(1) Jesse Ian Bailey as trustee of the Trust; and (2) Shawn B. McCarthy, the former trustee, in his individual capacity.  On January 5, 2011, defendants filed a motion to dismiss (Doc. 19) the first amended complaint, incorporating the amount in controversy arguments contained in the first motion to dismiss.  The court entered an order finding that the amount in controversy exceeds $75,000, and denying the motion to dismiss the first amended complaint on

5

January 24, 2011.  (Doc. 24.)

On February 10, 2011, defendants filed the motion to compel arbitration now under consideration.  (Doc. 25.)  On February 14, 2011, defendants answered the amended complaint.  (Docs. 27, 28.)  The litigation from that point forward has revolved around defendants' motion to compel arbitration.  McCarthy appeared for the first time on March 31, 2011, and joined in his co-defendants' motion to compel arbitration.  (Doc. 43.)  He has now appeared pursuant to the second amended complaint in his capacity as a former Trustee.  On April 20, 2011, Compass filed a motion styled as "Compass Bank's Motion for Partial Summary Judgment for Specific Enforcement of the Collateral Security Provisions or, in the Alternative for Preliminary Injunction."  (Doc. 48).  Rather than enter a scheduling order, the court stayed Compass's motion pending a ruling on defendants' motion to compel arbitration.  (Doc. 49.)

**DISCUSSION**

In opposing defendants' motion to compel arbitration, Compass relies on two arguments: waiver and severance.  Compass contends that defendants have waived the right to arbitrate by substantial participation in litigation before this court.  Next, Compass asserts that, even if defendants' litigation activity did not constitute a waiver, its claims must be severed because the arbitration clause does not cover Compass's claims for specific performance or breach of the Continuing Guarantee.  Compass

6

contends that, even if defendants' motion to compel arbitration is granted as to some claims, the claims not covered by the arbitration clause must proceed in this court.  Each argument is addressed in turn.

**Waiver**

As an initial matter, it must be noted that whether defendants have waived their right to arbitrate is arguably a question for the arbitrator, inasmuch as the arbitration agreement specifically covers issues of waiver:

> **Any dispute as to whether** any statute of limitations, estoppel, **waiver**, laches, or similar other doctrine **bars the arbitration of any Claim shall be decided by arbitration** in accordance with the provisions of this Agreement.

Given that the arbitration clause covers any disputes regarding its scope, it would appear that issues of whether defendants have waived their right to demand arbitration are for the arbitrator. Even if the arbitration clause does not specifically extend to issues of waiver, for the reasons that follow, defendants have not waived their right to demand arbitration.

While enforcement of arbitration clauses often involves questions of both state and federal law, whether a party has waived its right to arbitrate is controlled by federal law alone. *S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.,* 906 F.2d 1507, 1514 (11th Cir. 1990).  A party may, through its conduct, waive its

7

right to invoke arbitration, *id.*, but, because of the preference favoring arbitration set forth in the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the party arguing waiver "bears a heavy burden of proof." *Stone v. E.F. Hutton & Co.,* 898 F.2d 1542, 1543 (11th Cir 1990).

In determining whether a party has waived its right to arbitrate, the Eleventh Circuit has established a two-part conjunctive test:

> First, we decide if "under the totality of the circumstances," the party "has acted inconsistently with the arbitration right," and, second, we look to see whether, by doing so, that party has "in some way prejudiced the other party."

*Ivax Corp. V. B Braun of America, Inc.,* 286 F.3d 1309, 1315-16 (11th Cir. 2002)(quoting *S&H Contractors,* 906 F.2d at 1514).

The first requirement, action inconsistent with the arbitration right, is satisfied if the "party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate." *Ivax Corp.,* 286 F.3d at 1316 (quoting *Morewitz v. W of Eng. Ship Owners Mut. Prot. & Indem. Ass'n,* 62 F.3d 1356, 1366 (11th Cir. 1995). To support its waiver argument, Compass points to the following facts: (1) defendants did not move to compel arbitration until four months after service of process, during which time the defendants filed multiple motions to dismiss; and (2) Chubrich's representation, during a July, 2010, teleconference, and in an October, 2010, email, that Bailey and the CBI trust were

8

prepared to confess judgment as to Compass's claim for breach of contract.

As to defendants' participation in the litigation process, filing motions to dismiss based on alleged jurisdictional defects does not evince defendants' intent to abandon or forego arbitration. It is appropriate to decide the jurisdictional questions before moving to compel arbitration. Indeed, if this court lacked jurisdiction over this case, it would not have the authority to order arbitration, or anything else.

Likewise, Chubrich's representations that Bailey and the CBI Trust were prepared to confess judgment to Compass's breach of contract claim does not amount to a waiver. Chubrich never mentioned McCarthy. Compass did not serve the complaint on Chubrich as agent, and Chubrich did not file an appearance. It is unclear whether Chubrich had any authority to bind any of his clients. As to the July, 2010, phone conversation between Vogtle and Chubrich, this court is not aware of the existence of any such thing as an **oral** waiver of arbitration before a case is filed in court. If an arbitration clause in a contract can be invoked by either side, it cannot be orally waived. As to the October, 2010, email from Chubrich to Vogtle, Chubrich, who was not served and had not appeared in this action, only stated that his client was "prepared to confess Judgment with respect to your Count I." This hearsay statement, assumed to be true, does not constitute a waiver. If

Compass really believed that, and placed its trust in, a telephone conversation and email in which a New Hampshire lawyer who did not concede *in personam* jurisdiction for any prospective client, and who did not agree to accept service of a complaint filed in an Alabama court, constituted a binding waiver of the right to arbitrate, it was a case of wishful thinking.

To be sure, this case has generated a good number of filings, and the court has held two motion hearings. However, defendants' motions have been limited to two endeavors: (1) challenging the court's jurisdiction; and (2) seeking to compel arbitration. Defendants' jurisdictional challenges were legitimate, if not entirely successful. As noted, *supra*, it is proper to determine whether a court has power to decide a dispute before asking the court to order arbitration. As to the remainder of defendants' participation in litigation, it cannot be that attempting to compel arbitration waives the right thereto. Accordingly, the evidence Compass relies upon does not demonstrate that defendants have "acted inconsistently with the arbitration right." *Ivax Corp.,* 286 F.3d at 1315-16. Because Compass cannot satisfy the first requirement of waiver, Compass's waiver argument fails.

**Severance**

Compass contends that, even if defendants did not waive their right to arbitrate, the claims in this case are due to be severed. Specifically, Compass argues that the arbitration agreement does not

extend to its claims for breach of the Continuing Guaranty or for specific performance, and that the court should adjudicate these claims.  Each of these claims is addressed in turn.

The Continuing Guaranty does not contain an arbitration clause, and includes the following passage:

> Except as expressly set forth in this Guaranty, this Guaranty is the entire agreement of the Guarantors and the Bank with respect to the guarantee of the Indebtedness by the Guarantors and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon the Bank unless expressed herein.

(Doc. 35-2 at 44.)  Compass argues that this clause precludes arbitration of its claim for breach of the Continuing Guaranty.  If it were the only claim, the court would agree.  However, the Continuing Guaranty is only one of the agreements effectuating the complex financial transaction between Compass and Bailey.  It is inextricably linked to the other agreements, which are subject to arbitration clauses of nearly universal application. Likewise, the parties to this case are intertwined and cannot be separated.  The liabilities of the various parties under the various agreements can only be decided by one entity.  Piecemeal adjudication would be completely ineffective and a total waste of judicial resources, and might yield conflicting results.  This court, were it to sever and decide Compass's claim for breach of the Continuing Guaranty, would be trespassing on the arbitrator's prerogative. Parallel resolution tracks would set the stage for a race to judgment between the court

and the arbitrator, whereby each forum would scramble to avoid mutually binding *res judicata*, unless deliberately wanting to get of the hook. The court will not pull the trigger of that starting gun.

While Compass's severance argument regarding its claim for specific performance cannot bear the weight of the logic applicable to its claim for breach of the Guarantee Agreement, it fails for an additional reason. Compass contends that claims for specific performance cannot be arbitrated, relying on the following portion of the arbitration clause:

> Nothing in this arbitration provision shall limit your or our right, whether before, during, or after the pendency of any arbitration proceeding, to exercise any self-help remedies, such as set-off or repossession and sale of collateral, or to obtain provisional or ancillary remedies or injunctive or other traditionally equitable relief, such as filing an interpleader action.

(Doc. 32-1 at 12.) Compass contends that the above-quoted provision means that the arbitration clause "clearly exempt[s] 'traditional equitable relief' from [its] reach." (Doc. 35 at 18.) However, the arbitration clause specifically extends to:

> all disputes, controversies, and claims, whether based on contract, fraud, tort, intentional tort, statute, regulation, constitution, common law, **equity, or any other legal basis or theory**.

(Doc. 32-1 at 11)(emphasis added). Given that equitable claims are listed as matters to be arbitrated, the arbitration agreement is

12

ambiguous at best.  As explained, *supra*, the arbitration clause provides that disputes about the scope of the clause are to be decided by the arbitrator.  Accordingly, it is for the arbitrator to determine the forum in which Compass's claim for specific performance will be decided, and to order specific performance if appropriate.  This court, or some other court, might be called upon to enforce such an order, just as it would for an order to pay money, but is not called upon to issue or deny it in the first instance.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration will be granted.  A separate order effectuating this opinion will be entered.

DONE this 2nd day of May, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE